JAMES A. HOOPER *vs.* THE PRESIDENT, MANAGERS and COMPANY of THE BALTIMORE AND YORK-TOWN TURNPIKE ROAD.

*When a motion to Dismiss an Appeal will not prevail—Practice in the Court of Appeals—Turnpike Company—Collection of Tolls—Construction of a Railway on the bed of a Turnpike road—Acts of 1804, ch. 51, and 1824, ch. 105, construed—Right of the B. and Y. Turnpike Co. to collect Tolls on the portion of its Road within the limits of Baltimore.*

A motion to dismiss an appeal upon the ground that the transcript of the record of the case, was not transmitted to the Court of Appeals within six months from the time the appeal was taken, will not prevail, if it be shown that the delay in the transmission of the record was not caused by the fault or *laches* of the appellant.

Where a case is submitted to the decision of the Court upon law and fact, without the aid of a jury, and an appeal is taken from its judgment, the Court of Appeals will review the decision upon questions of law, if the record plainly discloses the points or questions raised and decided by the Court below.

The Legislature has the power to authorize the construction of a railway on the bed of a turnpike road, with the consent of the turnpike company; and the construction of such railway does not affect the right of the turnpike company to collect tolls under its charter.

The fact that an Act of Assembly, which authorized the construction of a railway on the bed of a turnpike road, did not provide for the condemnation of the rights of abutting land owners in the fee of said turnpike road, and no condemnation thereof was made, cannot be urged as a defence in a suit by the turnpike company for the recovery of tolls.

Under the provisions of the Act of 1804, ch. 51, and its supplements, and of the Act of 1824, ch. 105, the Baltimore and Yorktown Turnpike Company have the right to charge and collect tolls on such portion of their road as lies within the limits of the city of Baltimore.

Hooper *vs.* President, &c., of Balt & Yorktown Turnpike Road.

A person whose premises do not abut upon the turnpike, but who rents a pasture lot lying thereon, the lot not being parcel of the premises, but separated therefrom by a public highway, is not entitled to the privilege, secured by the 33d section of the chartar of the Baltimore and Yorktown Turnpike Company, (Act of 1804, ch 51,) which exempts " persons living on or adjacent to the turnpike road, within three miles of any of the gates, from the payment of toll more than once in twenty-four hours."

APPEAL from the Superior Court of Baltimore City.

This was an action brought in the Circuit Court for Baltimore county, by the appellee, against the appellant, to recover a bill for tolls incurred during the years 1867, 1868, and a part of 1869. The defendant pleaded the general issue. Upon the suggestion and affidavit of the defendant, the case was removed to the Superior Court of Baltimore city on the 22d of May, 1869 ; it was submitted to the Court for determination, without the aid of a jury, on the 18th of March, 1870.

*Exception:* The plaintiff, to sustain the issue on its part joined, proved by the keeper of Toll Gate, No. 1, on the plaintiff's turnpike; that the said gate was situated about one mile from the limits of the city of Baltimore; that the defendant, who resided about one hundred feet off the said turnpike road, on the west side of a road called the Old Powder-Mill Road, which intersects the said turnpike road at the Govanstown Hotel, and near the four-mile stone thereon, passed frequently through the said gate in going from his said residence to the said city, and returning during the period from February 1st, 1867, inclusive, to May 10th, 1869, inclusive, and that the claim of the plaintiff against the said defendant for tolls unpaid for the use of said turnpike road during said period, was correctly set forth, item by item, in the plaintiff's bill of particulars.

The witness further testified that the defendant had, during said period, a lot directly in front of his aforesaid residence, which lot fronts on the west side of said turnpike road, within three miles of the said gate, extends back to the east

side of the said Old Powder-Mill Road, upon which its rear fronts, and is separated from the said main residence by the said Powder-Mill Road. He further testified that he could not swear to any particular item in the bill of particulars, because he was not always present at the gate, and in his absence his mother kept the gate and reported to him on his return what credit passengers had passed through the same; that he could not distinguish in the bill of particulars which items thereof passed under his own observation, and which he learned from his mother; that he always charged the proportionate toll according to the number of miles the traveller said he had travelled, and was going to travel, and that in the bill of particulars, the mile from the city limits, along Greenmount avenue into the city, was included, for which, under instructions from the company, he did not at the time of testifying, charge.

The plaintiff further proved by the mother of the toll-gate keeper, that she was always present at the gate, in the absence of her son, and reported to him on his return what credit passengers had passed through the gate; that the defendant's carriages and horses had frequently passed through the gate during the period of the bill of particulars; that further than this, she knew nothing of the account contained in the bill of particulars, and could swear to no item thereof.

The evidence introduced by the defendant is sufficiently disclosed in the prayers which he offered.

The defendant's counsel prayed the Court to rule upon the evidence, as follows:

1st. That upon the pleadings and all the evidence in the cause the plaintiff is not entitled to recover, because the evidence does not support the account contained in the bill of particulars filed in the cause, or any item thereof.

2d. That upon the pleadings and all the evidence in the cause, the plaintiff is not entitled to recover, because the evidence does not show that there is an amount due the plaintiff in this cause equal to or exceeding the sum of fifty dollars.

3d. That if the Court find, from the evidence in the cause, that during the whole period of the said bill of particulars filed in the cause, there was laid along the east side of the said turnpike road, from its terminus at the city of Baltimore running thence along said east side, past the said premises of the defendant and past the seventh mile-stone on said turnpike road, a railway with rails unlike those of the ordinary city passenger railways, but resembling those of the ordinary railroads, and resting upon sleepers that stood so far above the surface of the said turnpike road, that the horses and carriages of the passengers thereon were excluded from at least one-fifth the width thereof, or were unable to use the said road one-fifth of the width without great inconvenience, and that the Act of 1860, ch. 259, offered in evidence, which authorized the construction of the railway, contained no provision for the condemnation of the rights of the abutting land owners in the fee of said turnpike road, and that no condemnation thereof was in fact made, then the plaintiff cannot recover.

4th. That if the Court find the facts stated in the defendant's third prayer, that then the plaintiff cannot recover more than four-fifths of the amount of the tolls authorized by the charter of the plaintiff, with interest and costs of suit.

5th. That if the Court find from the evidence that on or about the 8th day of September, 1825, the plaintiff did convey unto the Mayor and City Council of Baltimore all the estate, right, title and interest whatsoever of the plaintiff, both at law and in equity of, into and out of that part of the said Baltimore and Yorktown Turnpike Road, extending from the limits of the city of Baltimore into said city for one mile along Greenmount avenue, then the plaintiff cannot recover any toll for said mile, and a proportional deduction therefor must be made from the amount of the said bill of particulars.

6th. That if the Court believe from the evidence that the defendant held as tenant from year to year certain premises in Baltimore county, consisting of two lots, one of about five

acres, used by him as a pasture for his cows, fronting on the west side of said turnpike road, within three miles of said gate No. 1, and extending back to the east side of the said Old Powder Mill Road and binding thereon, which road was and had always been a public road; and the other of about six acres, fronting on the west side of the Old Powder Mill Road, directly opposite the former, and separated from it by only the said Old Powder-Mill Road, on which second lot defendant's residence stood, and in which residence he resided during the whole period of said bill of particulars; and that the said Old Powder-Mill Road and the said turnpike road join each other at the Govanstown Hotel, on said turnpike road, near the four mile-stone, forming a letter V; and also that David M. Perine, from whom the defendant rented said premises, owned land immediately adjacent to said latter lot upon which said Perine resided, which said land was not separated from the said turnpike road by any road or any means whatever, but fronted on said turnpike road within three miles of the said gate No. 1; and that the said Act of 1804, ch. 51, contained a provision to the effect that not more than one toll in any twenty-four hours should be exacted from any one living on or adjacent to said turnpike road, within three miles of any of the gates thereon, for passing the said gate, then the defendant is liable to only one toll for passing said gate No. 1 in any twenty-four hours, and the plaintiff cannot recover more than the same.

The Court rejected all the prayers, and the defendant excepted. The Court, (DOBBIN, J.,) on the 21st of March, 1870, pronounced judgment for the plaintiff for $131.97; and from this judgment the present appeal was taken by the defendant on the 3d of June, 1870.

A motion was made to dismiss the appeal on the ground, *inter alia*, that the transcript of the record was not transmitted to the Court of Appeals, within six months from the time of the appeal taken. The record was not transmitted until on or after the 9th of March, 1871.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ALVEY, J.

*George G. Hooper,* for the appellant.

The appellant was entitled to the privileges secured by the 33d section of the Act of 1804, chap. 51. His residence is within the terms of the Act, consisting as it does of two lots, one lying on the turnpike within three miles of gate No. 1, and the other immediately in the rear on which his house stands, and only separated from the former by a highway running between them. He held the fee of the highway, between the two lots, as abutting tenant on each side, and thus has a continuous lot to the turnpike, with a right of way to the public through it. *Angell on Highways,* 299; *Douglas vs. Boonsborough Turnpike Road Co.* 22 *Md.,* 219; 3 *Kent's Com.,* (5th *Ed.,*) 433; *Wright vs. Carter,* 3 *Dutcher,* 76.

Clauses in statutes conferring an exemption from the payment of tolls are construed most liberally in favor of the immunity. *Angell on Highways,* 349; *Bertram vs. Central Turnpike Co.,* 25 *Cal.,* 283; *Pennsylvania R. R. vs. Canal Com.,* 21 *Penn.,* 9; *Sedgwick on Stat. and Con. Law,* 339.

The appellee, by its railway, excluded the appellant from full one-fifth of its road, and cannot recover, if any thing, more than four-fifths of the regular tolls. If a turnpike company neglect to keep its road in proper repair, no toll is chargeable. *Sims vs. Yazoo & Big Black P. R.,* 38 *Miss.,* 23.

Laying rails on a turnpike road is a new servitude, and requires a new condemnation. *Imlay vs. Union Branch R. R.,* 26 *Conn.,* 349; *Douglas vs. Boonsborough Turnpike Co.,* 22 *Md.,* 219; *Rex vs. Morris,* 1 *B. & Ad.,* 441; *Kelly vs. Donahue, &c.,* 2 *Metcalf,* (*Ky.,*) 484; *Trustees of Pres. Society, in Waterloo vs. Auburn & Rochester R. R. Co.,* 3 *Hill,* 567; *Fletcher vs. Auburn & Syracuse R. R.,* 25 *Wend.,* 462; *Craig vs. Rochester, &c., R. R.,* 39 *Barb.,* 494.

If the Legislature can authorize one railway to appropriate one-fifth of the road, without condemnation, it can authorize

four more, and thus totally destroy the highway. The Act of 1860, ch. 259, is void, because it makes no provision for condemnation or indemnifying abutting owners. *Moale vs. Mayor, &c., of Baltimore,* 5 *Md.,* 314; *Thatcher, et al. vs. Dartmouth Bridge Co.,* 18 *Pick.,* 501.

The claim of the appellee is not supported by the evidence. The testimony of the gate-keeper does not go beyond his account, (the bill of particulars) and that is at best but a copy of the appellee's book entries, which, (although originals,) are not admissible in this State. He qualifies his first statement by admitting that he cannot swear to a single item, for the reason that of some his only knowledge is hearsay, viz: what his mother told him; and he cannot distinguish the latter from those that passed under his own observation. Such testimony cannot prove an account under the settled law of this State. *Salmon vs. Feinour,* 6 *G. & J.,* 60; *Lee, et al. Garnishees of Wolf, vs. Tinges,* 7 *Md.,* 215; *Lewis vs. Kramer & Rahn,* 3 *Md.,* 265; *Wallace vs. Gilmor,* 3 *H. & J.,* 383; *Clark vs. Magruder, et al.,* 2 *H. & J.,* 77; *Owings vs. Low,* 5 *G. & J.,* 134; *King vs. Maddux, Ex'r,* 7 *H. & J.,* 467; *Reynolds, Adm'r of Paul, vs. Manning,* 15 *Md.,* 510; *Green vs. Caulk,* 16 *Md.,* 556.

*Arthur W. Machen* and *I. Nevett Steele,* for the appellee.

Nothing is brought up by the record for review by an appellate tribunal. It does not appear that any questions of law were decided by the Court below. There is no *opinion of the Court* as there was in *Tinges vs. Moale,* 25 *Md.,* 480, and in *Thomas vs. Hunter,* 29 *Md.,* 411., The bill of exceptions does not purport to state all the evidence—in point of fact, it does not contain the whole. But even if the evidence all appeared, we cannot know how it was regarded by the Court, and until it be ascertained what state of facts was found, it is impossible to eliminate the questions of law involved in the judgment. That the Court has refused to lay down certain legal propositions in the language in which they

were presented, amounts to nothing in the case of such a trial as this. The prayers for aught that appears were rejected because they presented abstract propositions, or because the Court took such a view of the facts that in its opinion it was not necessary to pass judgment upon the prayers. In a case of this nature, a rejection of offered prayers is simply a refusal to entertain them. If a jury receive an instruction, and there is any evidence upon which they could possibly find so as to make it applicable, the instruction is pertinent; but a Court cannot instruct itself, and, consequently, where the whole matter is before the Court, its office must be "*first* to ascertain, from the proof, the facts, and *then* to apply the law to the state of facts as found." *Tinges vs. Moale,* 25 *Md.,* 485.

The evidence which was *in,* without objection to its admissibility, supports the account. And in point of fact the original book of entries was in evidence. The appellant was, himself, examined as a witness on his own behalf, and did not on the stand deny the correctness of a single statement in the account of the gate-keeper.

The evidence *did* show that there was more than the sum of $50 due, and it was so found as matter of fact by the Court in its verdict and judgment.

The construction of the railway was authorized by law. But even had it not been, the turnpike road was not thereby obstructed, and was, in fact, used by the appellant. The railway did not occupy any part of the artificial road of twenty feet in width required by the charter, but only occupied according to the appellant's proof, a narrow side strip, about one-fifth of the whole sixty-six feet owned by the company. It is not for the appellant to complain if there has been any interference with the rights of the owners of the soil.

The facts upon which the fifth prayer was founded, were not before the Court. If they had been, it would appear that the objection is wholly unfounded. *Act of* 1804, *ch.* 51, *sec.* 29; *Act of* 1824, *ch.* 105.

Hooper *vs.* President, &c., of Balt. & Yorktown Turnpike Road.

The facts of the case showed that the appellant was not within the exemption contained in the 33d section of the Act of 1804, ch. 51. The lot of ground, on which was situated the residence which he rented and occupied, was situated on the Powder-Mill road, and not on the turnpike, but separated therefrom by the premises belonging to the Govanstown hotel. The pasture lot subsequently rented was entirely distinct, and did not constitute part of the premises on which he resided. It nowhere appears in the record that he was charged more than once in the twenty-four hours for the same vehicle. The finding of the Court shows that in the judgment of the learned Judge, the facts did not entitle him to an exemption. See *Owings vs. Baltimore & Reisterstown Turnpike Road Co.*, Court of Appeals, June Term, 1820.

BARTOL, C. J., delivered the opinion of the Court.

We think the motion to dismiss this appeal ought to be overruled. The proof offered in this Court shows that the delay in the transmission of the record was not caused by the fault or *laches* of the appellant. By an amendment of the record, which has been filed by counsel, it appears that the bill of exceptions was signed and sealed by the Judge of the Superior Court on the 21st day of May, 1870, the same day on which the judgment was rendered. In our judgment, the questions of law raised by the appellant, and decided by the Court below, appear with sufficient distinctness by the bill of exceptions and the prayers of the appellant, bringing the case within the decisions of *Tinges vs. Moale*, 25 *Md.*, 480, and *Thomas vs. Hunter*, 29 *Md.*, 406, in which it was held, that where a case has been submitted to the decision of the Court upon law and fact, without the aid of a jury, this Court will review the decision upon questions of law, if the record plainly discloses the points or questions of law raised and decided by the Court below.

We proceed, therefore, to examine the questions presented by the appellant's prayers. As was said in *Tinges vs. Moale,*

" we cannot examine the facts in evidence in the bill of exceptions, with a view to adjudge whether the finding by the Court was or was not correct." There was testimony tending to prove the account of the appellee, which it would have been proper to submit to a jury, if one had been impannelled, and of the weight and conclusiveness of which it was the province of the Court, under the submission of the parties, to decide; the first and second prayers of the appellant were, therefore, properly rejected; they rested upon the theory of a total failure of evidence in support of the account sued on.

The third and fourth prayers vested the defence upon the theory that because a horse railway had been constructed upon the bed of the turnpike road on one side thereof, which created an obstruction to the free and convenient use for horses and carriages of that part of the road occupied by the railway, being one-fifth of its width; and because the Act of Assembly of 1860, ch. 259, which authorized the construction of the railway, contained no provision for the condemnation of the rights of abutting land owners in the fee of the road, and no condemnation thereof was in fact made, therefore the appellant was not bound to pay toll for the use of the turnpike road.

The third prayer claimed entire exemption from tolls for the reasons stated, and the fourth prayer claimed exemption to the extent of one-fifth of the tolls prescribed and authorized by the charter of the appellee.

Clearly there was no error in rejecting these prayers. There can be no doubt of the power of the Legislature to authorize the construction of the railway on the bed of the turnpike road, with the consent of the turnpike company, without affecting the right of the company to collect tolls under its charter.

The question of the rights of land owners abutting upon the turnpike road, growing out of the construction of the railway, is a question which in no manner affects the rights

and responsibilities of the appellant in this case, and cannot properly be raised by him, or urged in his defence to the suit.

The point raised by the fifth prayer is sufficiently answered by a reference to the Act of 1804, ch. 51, section 29, and the other provisions of the original charter and its supplements, regulating the tolls of the company; and especially by the Act of 1824, ch. 105, authorizing cessions to the Mayor and City Council, of such portions of the road as lay within the limits of the city of Baltimore, and the 4th section of the last named Act, which provides for the continuance of the turnpike gates, in the same manner as if such cessions had not been made.

The sixth, and last prayer, raises the question of the construction of the 33d section of the charter, Act of 1804, ch. 51, which exempts "persons living on, or adjacent to, the turnpike road, within three miles of any of the gates, from the payment of toll more than once in twenty-four hours."

The appellant claims that the facts disclosed in the evidence and stated in the prayer, entitle him to this exemption. We are not of that opinion. This provision of the charter was construed by the Court of Appeals, in the case of *Owings vs. The Baltimore and Reisterstown Turnpike Road Company*, decided at June Term, 1820. The Court held that "*the privilege must be confined to persons who reside on premises which lie on, and touch the road within three miles of the gate.*" Unquestionably this is the true construction of this section of the charter. The premises, upon which the appellant resides, do not abut upon the road; but he rents from Mr. Perine, a pasture lot for his cows, lying on the west side of the turnpike road, and so claims to be within the exemption. It appears, however, that this pasture lot is not parcel of the premises upon which his dwelling is situated, but is separated from them by a public highway called the "Old Powder-Mill road," which runs into the turnpike by an acute angle. The pasture lot lying between these roads, and the dwelling

and premises of the appellant lying on the other side of the Old Powder-Mill road. He is, therefore, not entitled to the privileges secured by the 33d section of the charter, and there was no error in refusing the sixth prayer.

*Judgment affirmed.*

(Decided 21st June, 1871.)