# CHARLES MARX, Executor,

## *vs.*

# ELIZABETH REINECKE.

*Appeal—Transmission of Record—Responsibility for Delay.*

Code, art. 5, sec. 6, providing that "the transcript of the record shall be transmitted to the Court of Appeals within three months from the time of the appeal taken," renders it obligatory on that court to dismiss the appeal in case the transcript is not transmitted within the time named, unless, as provided in section 40, the delay is shown to have been occasioned by the neglect, omission or inability of the clerk or appellee. p. 344

Delay in transmitting the record is excused by a showing that there was fault on the part of appellee or her attorneys of such a character that but for it the record would have been transmitted within the prescribed time, and that appellant was not chargeable with any lack of diligence. p. 345

Where neither appellee nor her counsel were responsible for the delay in transmitting the record until after the time named in the statute, what occurred thereafter is immaterial for the purpose of a motion to dismiss the appeal by reason of the delay. p. 347

Affidavits by the trial judge and counsel, as to who had possession of the bills of exception prior to their signature by the trial judge, *held* not to show that appellee's counsel was, by reason of his possession thereof, responsible for the delay in transmitting the record. p. 346

The trial judge cannot, by extending the time for filing bills of exception, extend the time limited by the rule for transmission of the record. p. 347

*Decided January 11th, 1923.*

Appeal from the Circuit Court for Anne Arundel County (Moss, J.).

Petition by Elizabeth Reinicke, excepting to an administration account filed in the Orphans' Court of Baltimore County by Charles Marx, executor of John Marx, deceased, and charging the wrongful withholding by said executor of a named sum. Issues having been transmitted to the Circuit Court for Baltimore County, they were thereafter transmitted to the Circuit Court for Anne Arundel County. From rulings in favor of petitioner, said executor appeals. Appeal dismissed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and ADKINS.

*Frank Driscoll* and *G. Clem Graetzel,* with whom was *John S. Strahorn* on the brief, for the appellant.

*William P. Cole, Jr., Laurence E. Ensor* and *Ridgley P. Melvin,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

A motion has been made in this case to dismiss the appeal on the ground that the record was not sent up in three months from the date of the appeal. The order for appeal was filed January 24th, 1922. The record reached this Court on August 17th, 1922.

The Code of Public General Laws, article 5, section 6 (Rule 2 of this Court), provides that in appeals from courts of law "the transcript of the record shall be transmitted to the Court of Appeals within three months from the time of the appeal taken."

Section 40 of article 5 of the Code (Rule 18), provides that no appeal shall be dismissed because the transcript shall not have been transmitted within the time prescribed, if it shall appear to the Court of Appeals that such delay was occasioned by the neglect, omission or inability of the clerk or appellee; but such neglect, omission or inability shall not be presumed, but must be shown by the appellant.

By an unbroken line of decisions of this Court, it has been
established that these rules mean that the appeal *must* be
dismissed if the record is not transmitted within the time
named, subject only to the exception contained in Rule 18,
and that this Court has no discretion in the matter. A
similar rule applicable to appeals from courts of equity has
been likewise construed. *Ewell* v. *Taylor*, 45 Md. 573;
*Steiner* v. *Harding*, 88 Md. 343; *Estep* v. *Tuck*, 109 Md.
528; *Md., D. & V. Ry. Co.* v. *Hammond*, 110 Md. 124; *War-
burton* v. *Robinson*, 113 Md. 24; *Horseman* v. *Furbush*, 124
Md. 581; *Castelberg* v. *Hamburger*, 133 Md. 42.

In *Steiner* v. *Harding, supra*, it was said: "The delay in
transmitting the record cannot be presumed to be the fault of
the clerk. Indeed, whenever such a delay occurs the appel-
lant must, to save the appeal from being dismissed, affirma-
tively show that the delay was occasioned by the neglect, the
omission or the inability of the clerk. The *prima facie* evi-
dence requiring the Court under its rules to dismiss an appeal
is furnished when the fact appears that more than three
months have elapsed between the date of the entry of the
appeal and the date of the transmission of the record; and
this *prima facie* evidence must be rebutted and overcome by
the appellant. He can overcome its effect by showing that the
delay was due (first) to the neglect, (second) to the omission,
or (third) to the inability of the clerk. If he fails to estab-
lish at least one of these exculpatory circumstances there is
no discretion given this Court to entertain the appeal; and
the appellee's right to have it dismissed, secured as it is by
the positive terms of the rule, becomes fixed and indefeasible.
The rule has the binding force of a statute and its observance
is obligatory in this Court. We have no power to relax it, or
to disregard it so long as it remains unrevoked. Cases falling
under it are not within the domain of a judicial discretion,
but they are governed by its imperative provisions."

In that case it was the clerk who was charged with the
delay, and the Court was applying the rule accordingly.
Here there is no suggestion that the clerk was in any way at

fault, but appellant seeks to overcome the *prima facie* presumption by attributing the fault to appellee's attorneys; and that, under the rule, would be a good excuse if it could be shown that there was fault on the part of appellee or her attorneys of such a character that but for it the record would have been transmitted within the prescribed time, and that appellant was not chargeable with any lack of diligence.

But the affidavits filed in this case by appellant do not present such a state of affairs. It distinctly appears from the affidavit of JUDGE Moss, the trial judge, that on the day after the papers, purporting to be bills of exception, were presented to him, on February 7th, 1922, and three days before the expiration of the extended time for presenting bills of exception, he examined them and found them not to be in proper form; whereupon he "sent for local counsel for appellant and so informed him, saying that the exceptions would have to be incorporated with the testimony before signing; whereupon appellant's counsel requested return of the paper, saying he would have it prepared in proper form. After the lapse of considerable time without the bills of exception being returned, the court made inquiry for the same, requesting appellant's counsel to return same to court; when, after several inquiries, he was informed that they were then in the hands of local counsel for the appellee, the certifying judge visited the office of local counsel for the appellee and requested the bills of exception, and was informed by said local counsel that he had no knowledge of the same being at his office, but would consult his stenographer when she returned from lunch and see if they had been left at the office, and if they could be found he would inform the court. Upon being informed by local counsel for appellee that the bills of exception had been found, having been left with his stenographer without his knowledge, the certifying judge walked to the office of local counsel for appellee and obtained the same, which he carried to his office in the court house, where he examined same, and finding same in form, signed same on August 3rd, 1922, and filed same with the clerk of this Court."

Now, although no dates are given by JUDGE MOSS as to when he made the inquiries referred to of local counsel for appellant, it does appear that it was after the lapse of considerable time, during which he was waiting for the paper to be returned to him; that the paper had been given by him to one of counsel for appellant, whom he informed of its defect, and that it was only after several inquiries that he was informed by said counsel that the paper was then in the hands of local counsel for the appellee.

The judge's affidavit also seems to state that he *forthwith* went to the office of local counsel for appellee, and that the discovery of the paper was made on the day of this visit, or, at any rate, about that time; and that all this happened within a few days of the time that the bills of exception were filed by him in the clerk's office. If, therefore, his recollection is accurate, one of counsel for appellant knew where the paper was and the delay did not occur after he informed the judge. Now, it should be said, the recollection of Mr. Strahorn, the appellant's local counsel, differs with the judge in his recollection as to when the judge informed him that the bills of exception were not in proper form, Strahorn stating that this occurred on the 31st day of July, 1922. But giving the statements of each equal credibility, of course appellant fails on this point. Strahorn and Graetzel make oath "on information and belief" that the bills of exception filed with the Court on February 7th, 1922, were, "for a long period of time," in the hands of Ridgely P. Melvin, local attorney for appellee. But not only is this admittedly hearsay and suspicion, but it is not stated how long they *believe* the paper was in his hands. For all that these affidavits say, the paper may not have reached the hands of Melvin until after the expiration of the three months period from the entry of the appeal. Besides, there is the affidavit of Melvin that the paper was in the possession of Strahorn until Melvin left Annapolis about May 25th, for a four weeks' trip to the Pacific Coast; and that it was not until some time in July that his attention was called to the fact that a paper purporting

to be re-drafted bills of exception had been left, on or about that time, at his office by appellant's local counsel; and Melvin's stenographer makes oath that no such paper had been left in Melvin's office, at the earliest, prior to May 25th, 1922.

There is no suggestion of fault on the part of appellee, personally, or of either of her other two counsel; and the affidavits of these counsel negative any such idea.

Giving full credit to the affidavits produced on behalf of appellant and disregarding entirely those on behalf of appellee, there would still be an utter failure to show that appellee or any of her counsel were in any way connected with the delay that occurred prior to the expiration of the time prescribed for the transmission of the record. That being so, what may have occurred after that becomes immaterial.

Appellant also relies on the alleged neglect of the trial judge to sign and file the bills of exception. But the affidavit of counsel does not fix the time when the alleged requests were made of the judge to act in the matter, after he called attention to needed corrections, and we do not think it overbalances in weight the affidavit of the judge, which states clearly the situation as he remembers it, and negatives any fault on his part. But even if this were otherwise, a trial judge may not, by neglect or delay, or even by extending the time for filing bills of exception, extend the time limited by the rule for transmitting the record. On refusal or neglect by him to sign proper bills of exception within a reasonable time after their presentation, a writ may be obtained from this Court requiring him to do so. *Marsh* v. *Hand,* 35 Md. 123; 2 *Poe, Pl. & Pr.,* sec. 325.

It follows that the appeal must be dismissed. Our regret at this result is lessened by the fact that, after a careful examination of the record and the briefs, we all are of the opinion that the judgment would have to be affirmed if we were at liberty to pass on the questions presented by the record.

*Appeal dismissed.*